NATIONAL MORTGAGE COMPANY,
Plaintiff-Appellant,

v.

W. Clark WASHINGTON and Charles
A. Beckham, Jr.,
Defendants–Appellees.

Court of Appeals of Tennessee,
Western Section, at Jackson.

May 6, 1987.

Application for Permission to Appeal
Denied Dec. 7, 1987.

Erich W. Merrill, Memphis, for plaintiff-appellant.

Sam Blair, Memphis, for defendant-appellee, W. Clark Washington.

William W. Dunlap, Jr., Memphis, for defendant-appellee, Charles A. Beckham, Jr.

CRAWFORD, Judge.

This is a legal malpractice action. Plaintiff, National Mortgage Company, appeals from the order of the trial court granting summary judgment to the defendants, W. Clark Washington and Charles A. Beckham, Jr.

Plaintiff's complaint, filed September 10, 1985, alleges that the plaintiff is a mortgage banker engaged in the general real estate loan business, and in the course of its business held a first deed of trust on real estate owned by Carl F. Hirlston in Clarksville, Montgomery County, Tennessee. The payment of the loan secured by the deed of trust was guaranteed by the Veterans Administration pursuant to its rules and regulations. The complaint avers that in February, 1983, Hirlston filed a petition in bankruptcy in the bankruptcy court in El Paso, Texas, and the plaintiff retained defendant Washington of Memphis, Tennessee, and defendant, Beckham, of El Paso, to represent its interest in the bankruptcy proceeding.

Plaintiff alleges that the defendant entered an order in bankruptcy court allowing plaintiff to foreclose the deed of trust, but that defendants "carelessly, negligently and improperly" provided that the plaintiff waived any deficiency resulting from the foreclosure. Plaintiff further avers that the subsequent foreclosure resulted in a deficiency and when it called upon the Veterans Administration to pay the balance due on the loan pursuant to its guaranty

agreement, the VA refused to pay on the grounds that the waiver of deficiency in the bankruptcy consent order violated VA regulations rendering the guaranty agreement null and void. Plaintiff avers that the action of the defendant in entering the consent order in the bankruptcy court which violated the rules and regulations of the VA was negligent and fell below the standard of reasonable competence required of attorneys and was the proximate cause of the VA's refusal to honor its guaranty resulting in loss to the plaintiff.

Defendant, Washington, filed an answer in which he relied upon the statute of limitations, plaintiff's contributory negligence, and the independent intervening action of third parties. Defendant also denied the material allegations of the complaint and denied that he was guilty of any negligence in the premises. Defendant Beckham filed a motion to dismiss pursuant to Rule 12, Tennessee Rules of Civil Procedure on the grounds that there was a lack of personal jurisdiction over the defendant and that the action was barred by the one year statute of limitations, T.C.A. § 28-3-104.

On Defendants' motions the trial court granted summary judgment to defendants on the ground that plaintiff's action is barred by the one year statute of limitations.

The record before us in addition to the pleadings consists of the affidavit of defendant Washington in support of the motions for summary judgment and the affidavits of Millie Nye and Carrie Robinson with exhibits attached in opposition to the motions for summary judgment.

Defendant Washington's affidavit states that when he was contacted by National Mortgage Company regarding the Hirlston bankruptcy matter he contacted Beckham who agreed to handle the case for National. Affiant declares that all correspondence he received from Beckham was delivered to National by its runner and that the agreed order of June 30, 1983, was so delivered to National within one or two days of his receipt of Beckham's July 7, 1983, letter.

The material evidence gleaned from Carrie Robinson's affidavit is as follows: Defendant attorney Clark Washington represented National Mortgage Company in connection with bankruptcy proceedings filed by its mortgagees, and she as bankruptcy clerk with National referred the Hirlston matter to the defendant Washington by letter of March 11, 1983. Since this letter describes the employment contemplated we reproduce it herein:

## NATIONAL MORTGAGE COMPANY

•••• •••••• •••••• •••• / •••••••, •••••••• ••••• / •••••••••• •••••• •••-••••

March 11, 1983

Mr. Clark Washington, Attorney
8 North Third St
29 Floor  Sterick Bldg
Memphis, TN  38103

RE:  Carl F.& Janis Ann Hirlston
     BK: 13-3-83-00072
     NMC: 280573
     PROPERTY:  ORTO 3, Dunbar Cave Rd,  Clarksdale, TN  37040

Dear Clark,

     I am enclosing the necessary documents and information in order that you may assist National Mortgage Company, servicing agent of Franklin Society Federal Savings & Loan, in connection with the above captioned.

     The above debtors filed in Texas, but their property with us is in Tennessee. On the Bankruptcy Notice, it stated that we were listed as unsecured- returning property in cancellation of debt. This sounds like they want to deed the property back to us, but this is a VA loan and they have to have permission from the VA. I called the VA and asked if they would accept a Deed in Lieu on this property and they said no. So I don't know what the debtors are going to do. The account is currently due for March 1983.

     Please make sure that we are secured and National Mortgage is paid.

     If additional information is needed, please advise.
     Thank you for your cooperation in this matter.

                                      Sincerely yours,

                                      Carrie Robinson
                                      Bankruptcy Clerk

---

She further declared that defendant Washington employed Charles A. Beckham, Jr., attorney of El Paso as local counsel to represent National Mortgage Company's interest and that she received a copy of Beckham's letter dated July 7, 1983, enclosing a copy of an agreed order filed on June 30, 1983, in the bankruptcy court  The letter states:

Enclosed is a copy of the Agreed Order granting relief from the automatic stay and the Order entered regarding the Motion for Rehearing on the Order Concerning Claims and the Objection to Abandonment of Property.  As you can see from a review from the Orders, the National Mortgage Company is relieved from the stay and may proceed to foreclosure. Moreover, since the National Mortgage Company was granted relief from the stay, the Motion for Rehearing on Order Concerning Claims became moot and was dismissed without prejudice.  I persisted in the objection to abandonment of the property to Northern Bank of Clarksville, Tennessee, however, to avoid any

prejudicial ruling to National Mortgage Company. As such, the Court denied the abandonment of property to Northern Bank of Tennessee and they will have to pursue a complaint for relief from stay in the Bankruptcy Court in El Paso, Texas. The entry of these Orders should conclude this matter, and I will be submitting a bill to National Mortgage Company for my services.

The agreed order provides that the automatic stay was to be lifted and that National be allowed to take any action desired regarding the Clarksville real estate. The order further provided:

3. That NATIONAL MORTGAGE COMPANY shall make no claim against the Debtors herein for any deficiency or costs relating to the mortgage loan against said property.

Affiant further stated that she was relying upon defendant Washington to protect National's interest and when she received the copy of the letter and the order she filed them away. She has had no legal training and could not determine whether pleadings and procedures were appropriate and proper and was relying upon defendant Washington to see that the interests of her company were protected pursuant to the instructions that she had given him. She further declares that she was never asked to review any particular pleading or order, nor was she consulted by Washington or Beckham concerning the entry of the agreed order above set out. She further deposed that if she had been requested to determine whether any particular proceeding was in compliance with the VA regulations she would have had to refer the request to the Veterans Administration with the request for a ruling, and she at all times assumed that defendant Washington was properly protecting the interest of her company.

Millie Nye's affidavit states in substance that she was in the foreclosure department of National Mortgage Company in 1983 and 1984 and handled the foreclosure of the Hirlston property and that the trustee's deed was executed on August 3, 1984, and that after the deficiency was determined,

National Mortgage Company filed a claim with the VA seeking payment of the deficiency under the VA's guaranty. In November, 1984, the VA requested information from National Mortgage Company about the effect of the consent order entered in the bankruptcy proceeding, and she requested Washington to obtain this information. Washington requested Beckham to furnish the information and by letter of December 5, 1984, Beckham advised:

Dear Ms. Luck:

Clark Washington has requested that I advise you regarding the status of the above-referenced matter. Please be advised that on June 30, 1983, the stay was lifted with regard to National Mortgage Company allowing National Mortgage Company to proceed to foreclose upon its lien upon the subject property. In exchange for the lifting of the lien, National Mortgage Company agreed not to proceed against the Debtors for the collection of any deficiency or cost relating to its lien.

If you have any further questions or comments regarding this matter, please let me know.

She further states that in January, 1985, National Mortgage Company received another request from the VA about the effect of the said bankruptcy consent order and again Washington was asked for the information. Washington in turn requested the information from Beckham, and Beckham advised National Mortgage Company by letter of January 17, 1985, as follows:

In response to our telephone conversation of January 14, 1985, please be advised of the following. The Order of June 30, 1983, entered in the above-referenced matter accomplished three tasks:

1. The Order lifted the stay with regard to National Mortgage Company;

2. It allowed National Mortgage Company to proceed to foreclose upon the collateral subject to its liens; and

3. It provided that National Mortgage Company would waive its deficiency upon the loan. I believe that the waiver of the deficiency claim would apply to National Mortgage Company as well as

any subsequent holder of the note of the National Mortgage Company note such as the Veterans Administration.

She further declares that subsequently National was advised by the VA that some question had arisen regarding possible violation of VA regulations by the agreed order and that the matter was being referred to the Veterans Administration Washington Office. By letter of July 17, 1985, National was advised by the VA that payment would not be made under the guaranty because the release of Hirlston from liability for any deficiency violated VA regulations.

The trial court in granting summary judgment held that plaintiff's cause of action is barred by the statute of limitations provided for in T.C.A. § 28-3-104 (1980), which we quote in pertinent part:

> [a]ctions and suits against attorneys for malpractice whether said actions are grounded or based in contract or tort ... shall be commenced within one (1) year after cause of action accrued.

Plaintiff's suit was filed September 10, 1985, and the real question presented in this appeal is when the cause of action accrued. Defendants contend that the cause of action accrued several days after July 7, 1983, when plaintiff was furnished a copy of Beckham's letter of July 7, 1983, and a copy of the agreed order in which National Mortgage waived its claim for any deficiency, and thus the suit filed September 10, 1985, is barred. On the other hand, plaintiffs contend that the cause of action did not accrue until the VA refused to pay National Mortgage Company under its guaranty agreement, which refusal was on July 17, 1985, and the suit filed September 10, 1985, was within one year thereafter and timely filed. Plaintiff also contends that in no event could the cause of action accrue until the date the defendant attorney advised that the VA was bound by the agreed order's waiver of deficiency. This advice was given by letter of January 17, 1985, and thus the suit filed September 10, 1985, was timely filed.

In recent years the question as to the accrual of a legal malpractice action has been before our Supreme Court on several occasions. In *Ameraccount Club, Inc. v. Hill*, 617 S.W.2d 876 (Tenn.1981), the Court held that a cause of action against an attorney for malpractice does not accrue until the date the negligence becomes irremediable. In *Ameraccount*, the client learned of the attorney's negligence in the handling of the application for a service mark with the U.S. Patent Office, but filed suit more than one year after learning of the negligence. The court held, however, that since there was no injury sustained by the client until the patent office made a final decision and refused to register the service mark and logo, the suit was not time barred because the statute did not begin to run until injury to the plaintiff occurred. In reaching this decision the court said:

> In *Teeters v. Currey, supra* [518 S.W.2d 512 (Tenn.1974)], we did hold in that medical malpractice action that the statute of limitations began to run when the patient discovered, or in the exercise of reasonable care and diligence for her own health and welfare, should have discovered the resulting injury. 518 S.W.2d at 517. We continue to adhere to our decision in *Teeters*, but we think that the appellate court misapplied its rationale in the instant case. The Court of Appeals erred in holding that the plaintiff's cause of action accrued and the statute of limitations began to run when the plaintiff became aware of the negligence of the defendant attorneys; still more was required, vis., damage or injury to the plaintiff resulting from that negligence. In *McCroskey v. Bryant Air Conditioning Company*, Tenn., 524 S.W.2d 487, 491 (1975), we held with respect to an action for damages based upon a products liability theory that "the cause of action accrues and the statute of limitations commences to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered."

The reasoning and rule applied in *McCroskey* and in *Teeters* applies in the instant case. Although the plaintiff may have been aware of the defendant attor-

neys' "negligence" as early as August 18, 1975, or September 2, 1975, no damage or injury resulted to the plaintiff by reason of that "negligence" until on or about April 27, 1976, when the United States Patent Office rejected the plaintiff's application. *See, Roberts v. Berry,* 541 F.2d 607, 610 (6th Cir.1976).

617 S.W.2d at 878.

In *Security Bank and Trust Company v. Fabricating, Inc.,* 673 S.W.2d 860 (Tenn. 1983), a class action was brought by a representative of a class of bond holders against a law firm for damages resulting from an alleged malpractice. In determining when the cause of action accrued the court said:

> Obviously negligence without injury is not actionable; hence, the statute of limitations could not begin to run until the attorney's negligence had resulted in injury to the plaintiff. In the instant case, the injury to the bond holders occurred on October 1, 1974, *when the bonds defaulted.* There is no merit whatever in the plantiffs' argument that their injury did not occur until the suit against the guarantors in Texas was concluded. A plaintiff cannot be permitted to wait until he knows all of the injurious effects as consequences on an actionable wrong. *Taylor v. Clayton Mobile Homes, Inc.,* Tenn., 516 S.W.2d 72 (1974).

673 S.W.2d at 864–65.

In *Chambers v. Dillow,* 713 S.W.2d 896 (Tenn.1986), the Supreme Court again considered the accrual of the cause of action. In holding that plaintiff's suit was barred because the cause of action accrued more than one year prior to filing suit the court said:

> Where as here the client has knowledge of the lawyer's negligence, of the termination of his lawsuit, of the legal consequences of that termination, and has employed another lawyer to prosecute his malpractice claim, he cannot defer the irremediable injury date by futile efforts to revive a legally dismissed lawsuit.
>
> There is an additional reason why plaintiff's cause of action for malpractice accrued in March, 1982. Assuming that the full extent of his damages were not ascertainable at that time, we have held that a plaintiff cannot be permitted to wait until he knows all of the injurious effects as consequences of an actionable wrong. *Security Bank and Trust Co. v. Fabricating Inc.,* 673 S.W.2d 860 (Tenn. 1983), *Taylor v. Clayton Mobile Homes, Inc.,* 516 S.W.2d 72 (Tenn.1974). Plaintiff was liable for the court costs of his dismissed lawsuit, he had suffered a lengthy delay in the process of his case, even if it be assumed it was subject to revival, and at a minimum had lost the interest on the use of an anticipated money recovery. Also he was immediately faced with the necessity to incur additional attorney's fees, all as a direct result of Frost's negligence. Those damages, which had matured in March, 1982, together with his full knowledge of Frost's negligence, were sufficient *injury* to trigger the accrual of plaintiff's cause of action without regard to whether or not the Washington County lawsuit had reached the irremediable stage.

713 S.W.2d at 898–99.

In the case sub judice defendant Washington regularly handled matters for plaintiff and was retained in this instance pursuant to Carrie Robinson's letter of March 11, 1983. The letter is quite explicit that Washington's employment was to make sure that plaintiff's security was protected and that plaintiff would be paid. The letter also makes it quite clear that this is a VA guaranteed loan which obviously would have some affect on whether plaintiff would be paid. Washington accepted the employment as prescribed and associated Beckham on the case. Although the record is silent on this point, we assume that Washington fully advised Beckham of the terms of employment.

■ Although defendants deny that they were negligent in entering the agreed order in the bankruptcy proceedings which waived plaintiff's right to deficiency, they assert that plaintiff was fully alerted to any negligence when it received a copy of the agreed order. The record does not reflect that defendants at any time conferred with plaintiff about the agreed or-

der, and certainly they do not contend that plaintiff consented to the action taken. Defendants ask us to assume that plaintiff knew or should have known that its waiver of deficiency in a bankruptcy proceeding at the instance of its counsel would defeat its right to the VA guaranty payment. This we are unable to do. Defendants were hired to protect plaintiff's debt and entered an order without plaintiff's approval which ultimately had the effect of defeating payment of the debt. If the lawyer charged with the duty to protect plaintiff's debt was unaware of the ramifications of this order, is it reasonable to charge the layman relying on the attorney with such knowledge? We think not. Plaintiff first learned that the VA might be affected by the agreed order when it received a copy of Beckham's letter dated January 17, 1985. This was within one year of the date suit was filed.

We must keep in mind that in this case we are dealing with the trial court's grant of a summary judgment. Summary judgment is to be rendered by a trial court only when it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn.R.Civ.P. 56.03 (1984). In ruling on a motion for summary judgment, the trial court and the Court of Appeals must consider the matter in the same manner as a motion for a directed verdict made at the close of the plaintiff's proof, i.e., all the evidence must be viewed in the light most favorable to the opponent of the motion and all legitimate conclusions of fact must be drawn in favor of the opponent. It is only when there is no disputed issue of any material fact that a summary judgment should be granted by the trial court and sustained by the Court of Appeals. *Graves v. Anchor Wire Corp. of Tennessee,* 692 S.W.2d 420 (Tenn.App. 1985); *Bennett v. Mid–South Terminals Corp.,* 660 S.W.2d 799 (Tenn.App.1983).

■ Although in this case it appears that the basic facts may be undisputed, there is a strong conflict as to the proper interpretation of those facts. In *Prescott v. Adams,* 627 S.W.2d 134 (Tenn.App.1981), the question to be determined was as in the instant case when the plaintiff should have reasonably known that the cause of action existed. The Court, in reversing the trial court's granting of summary judgment, said:

> We believe it is inappropriate for the Chancellor to have decided this question on the basis of a motion for summary judgment. Although the facts may not have been in dispute, a dispute did exist as to the proper interpretation of those facts. Summary judgment for the defendant is not proper where, although the basic facts are not in dispute, parties in good faith may disagree nevertheless about the inferences to be drawn from the facts. *See S.J. Groves & Sons Co. v. Ohio Turnpike Commission,* 315 F.2d 235 (6th Cir.), *cert. denied,* 375 U.S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57 (1963). In 54 C.J.S. *Limitations of Actions* § 399(b) (1948), it is said:
>
>> The time of the accrual of the cause of action, as affecting limitations, is frequently a question of fact to be determined by the jury or trier of fact, as where the evidence is conflicting or subject to different inferences.

627 S.W.2d at 138–39. Although the trial court may draw a conclusion from the uncontroverted evidence, this court is not bound by that conclusion. *See Executone of Memphis, Inc. v. Garner,* 650 S.W.2d 734 (Tenn.1983).

Defendants argue that when plaintiff was apprised of the agreed order waiving deficiency, it should have known the legal effect of the order on the VA guaranty. Plaintiff contends that they did not know the effect of the order on the VA guaranty until the VA denied payment. Whether the plaintiff's employee should have known the legal effect of the order calls for a determination of the reasonableness of the employee's conduct. Whether any kind of behavior conforms to a legal standard of reasonable conduct is a mere fact question for the jury, and not a question of law. *Hathaway v. Middle Tennessee Anesthesiology, P.C.,* 724 S.W.2d 355 (Tenn.App.1986); *see Smith v. Sloan,* 189 Tenn. 368, 225 S.W.2d 539 (1949), *reh'g denied* 189 Tenn. 378, 227 S.W.2d 2 (1950).

■ Furthermore, if we assume in this case that plaintiff knew or should have known of defendant's negligence when

plaintiff received a copy of the agreed order, there is nothing in the record before us to indicate that there was any injury sustained by plaintiff until the VA declined to make payment under its guaranty. The record reflects that the VA considered National's claim for some time before finally denying payment. The VA regulations are not a part of the record and there is simply no proof in the record of any injury or damage to the plaintiff resulting from defendant's negligence until the VA rejected its claim. As the court said in *Security Bank & Trust Co. v. Fabricating, Inc.*, 673 S.W.2d 860 (Tenn.1983):

> [o]bviously negligence without injury is not actionable; hence the statute of limitations could not begin to run until the attorney's negligence had resulted in injury to the plaintiff.

673 S.W.2d at 864.

Accordingly, the order of the trial court granting summary judgment to defendants is reversed and this case is remanded for such further proceedings as necessary. Costs are assessed against the appellees.

TOMLIN, P.J. (W.S.), and NEARN, J. (Retired), concur.