**CALEDONIA LEASING AND EQUIPMENT CO., INC.,**
**Plaintiff/Appellant,**

**v.**

**ARMSTRONG, ALLEN, BRADEN, GOODMAN, McBRIDE & PREWITT, Attorneys, A Partnership, Defendant/Appellee.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Nov. 17, 1992.

Application for Permission to Appeal Denied by Supreme Court March 1, 1993.

Mary L. Wolff, Daniel K. Evans, Wolff Ardis, Memphis, for plaintiff/appellant.

Joel Porter, Kathryn E. Story, Burch Porter & Johnson, Memphis, for defendant/appellee.

HIGHERS, Judge.

On March 14, 1985, Caledonia Leasing and Equipment Company, Inc. ("Caledonia Leasing") sued its former attorneys, Armstrong, Allen, Braden, Goodman, McBride & Prewitt, ("Armstrong, Allen"), seeking damages for legal malpractice committed in perfecting security interests in real property for a loan Caledonia Leasing made to Gordon Transports, Inc. (Gordon Transports). On October 24, 1991, the trial court granted Armstrong, Allen's motion for summary judgment, holding that the statute of limitations barred Caledonia Leasing's claim. Caledonia Leasing has appealed that decision to this court, and we reverse.

In 1982, Caledonia Leasing was primarily involved in leasing several operating terminals to Gordon Transports which operated an interstate truck line. Gordon Black, Wakefield Gordon and McClain Gordon were the principal shareholders and the Board of Directors of both Gordon Transports and Caledonia Leasing. McClain Gordon was president of both Gordon Transports and Caledonia Leasing. Neither corporation, however, had an ownership interest in the other.

On September 20, 1982, Caledonia Leasing made two loans to Gordon Transports in the total amount of $657,315.92. As security for the loan, Gordon Transports executed six deeds of trust that gave Caledonia Leasing a security interest in certain real properties of

Gordon Transports located in six different states.

Caledonia Leasing engaged Armstrong, Allen to perform the legal services necessary to perfect its security interest in the real properties. Under federal bankruptcy law, perfection of the trust deeds within ten days of the September 20th loan was necessary to prevent a subsequent bankruptcy trustee for Gordon Transports from avoiding Caledonia Leasing's deeds of trust as preferential transfers. Armstrong, Allen recorded the deeds of trust in the appropriate jurisdictions on and between October 18–22, 1982.

On February 9, 1983, Gordon Transports filed a voluntary petition for reorganization in the United States Bankruptcy Court for the Western District of Tennessee under Chapter 11 of the Bankruptcy Code and became a debtor in possession.[1] Gordon Transports retained James S. Cox and Associates and William H. Thomas, Jr., to provide legal representation for the company in the bankruptcy proceedings. On April 14, 1983, the Bankruptcy Court granted Gordon Transports' motion to convert the Chapter 11 bankruptcy proceeding into a Chapter 7 liquidation proceeding, and it appointed A.J. Calhoun as Bankruptcy Trustee ("Trustee") of the case.

In July and September of 1983, the Bankruptcy Court authorized the Trustee to sell certain real properties of Gordon Transports. On July 18, 1983, the Trustee filed a motion to hold in escrow the net proceeds from the sale of Gordon Transports' land and truck terminals in Corinth, Mississippi, and Gainesville, Georgia, upon which Caledonia Leasing held a deed of trust. In his motion, the Trustee stated that he was reviewing Gordon Transports' records and believed that he might have several causes of action against Caledonia Leasing for a sale by Gordon Transports of Caledonia Leasing stock to McClain Gordon, Wakefield Gordon and Gordon Black for less than fair market value and, following the sale, an increase in Gordon Transports' lease payments to Caledonia Leasing. The Trustee further stated that he was investigating the probability of other

wrongful acts that could give him a cause of action against Caledonia Leasing. Caledonia Leasing answered and alleged that it held a perfected security interest in the real property to be sold and was entitled to payment from the proceeds of any court approved sale.

On August 3, the Bankruptcy Court allowed James S. Cox & Associates, and William H. Thomas, Jr., to withdraw as counsel for Caledonia Leasing, and James D. Causey was substituted as counsel.

On October 5, 1983, the Bankruptcy Court, by consent of the parties, authorized and directed the Trustee to hold in escrow the gross proceeds of the sale of all terminals in which Caledonia Leasing claimed a security interest to afford the Trustee sufficient time to determine if he had a supportable defense to the validity of Caledonia Leasing's trust deeds or grounds to support an objection to the allowance of any claim filed by Caledonia Leasing. The order provided that the interest of Caledonia Leasing as a secured party, if any, would attach to the gross sales proceeds and any interest thereon being held in escrow by the Trustee.

On March 15, 1984, the Trustee filed an adversary proceeding against Caledonia Leasing to avoid its deeds of trust pursuant to § 547 of the Bankruptcy Code as preferential transfers. His complaint alleged that Caledonia Leasing was an "insider" of Gordon Transports, that Caledonia Leasing's perfection of its security interest in Gordon Transports' real property was a transfer of property to or for the benefit of Caledonia Leasing on account of an antecedent debt made while Gordon Transports was insolvent, within one year from Gordon Transports' bankruptcy filing and that the transfer allowed Caledonia Leasing to receive more than it would in a Chapter 7 bankruptcy case. Caledonia Leasing settled the adversarial proceeding well over a year later.

On March 14, 1985, Caledonia Leasing sued Armstrong, Allen for negligently failing to timely record the deeds of trust. Their complaint alleged that, if the Trustee was

---

1. The Bankruptcy Code empowers a debtor in possession to avoid certain transfers of the debt-

or as preferential transfers. 11 U.S.C.A. §§ 547, 1107(a) (West Supp.1992).

successful in setting aside Caledonia Leasing's deeds of trust because they were filed late, then Armstrong, Allen's negligence in recording the deeds caused their injury. On May 30, 1990, Armstrong, Allen moved for summary judgment alleging that the statute of limitations barred Caledonia Leasing's cause of action. The trial court granted the motion on October 24, 1991.

Caledonia Leasing presents the following issue on appeal: did the trial court erroneously find that no genuine issue of material fact existed with respect to whether or not the plaintiff's legal malpractice claim was timely filed.

■ Under Tenn.R.Civ.P. 56.03, a summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Moving parties may demonstrate that they are entitled to a judgment as a matter of law in several ways. First, they may affirmatively negate an essential element of the nonmoving party's claim. Second, they may conclusively establish an affirmative defense that defeats the nonmoving party's claim. Third, they may demonstrate that the nonmoving party cannot establish an essential element of its case. *Moman v. Walden*, 719 S.W.2d 531, 533 (Tenn.App.1986). *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727, at 130–31 (2d ed. 1983).

■ In ruling on a motion for summary judgment, both appellate and trial courts must review the matter in the light most favorable to the nonmoving party and draw all legitimate conclusions of fact in its favor. *Smith v. Sovran Bank Cent. South*, 792 S.W.2d 928 (Tenn.App.1990). If the pleadings, stipulations, depositions, and affidavits, when viewed in the light most favorable to the opponent of summary judgment, show that no genuine issue of material fact exists, and if the record reveals no error of law, the moving party is then entitled to summary judgment. *Maxwell v. Davco Corp. of Tennessee*, 776 S.W.2d 528, 531 (Tenn.App.1989).

■ We turn now to the question of when the statute of limitations bars an attorney malpractice claim. Tenn.Code Ann. § 28–3–104(a) (Supp.1990) provides:

> The following actions shall be commenced within one (1) year after the cause of action accrued: ...
>
> (2) Actions and suits against attorneys ... for malpractice, whether the actions are grounded or based in contract or tort;
> ....

A cause of action for legal malpractice accrues and the statute of limitations commences to run when (1) the attorney has committed negligence, (2) the client has been injured by that negligence, *Ameraccount Club, Inc. v. Hill*, 617 S.W.2d 876, 878–79 (Tenn.1981), and (3) the client discovers, or in the exercise of reasonable care and diligence, should have discovered, the existence of the facts constituting negligence by the attorney and the injury caused by the attorney's negligence. *Security Bank & Trust v. Fabricating, Inc.*, 673 S.W.2d 860, 865 (Tenn.1983).

In recent years, the Supreme Court has considered the elements of the accrual of a legal malpractice action. In *Ameraccount Club, supra*, the plaintiffs employed the defendant attorneys to register a service mark and logo with the United States Patent Office. In December of 1974, the attorneys negligently submitted an incomplete registration application, and on March 3, 1975, they learned of their omission. On March 13, 1975, the attorneys filed the additional information necessary to complete the application. Thus, March 13, 1975, became the official filing date of the application. On August 13 and 15, 1975, the Patent Office informed the attorneys and the plaintiffs respectively that an application for registration of a similar logo had been filed on February 28, 1975, and would be cited against the plaintiff's application because of its prior filing date. On September 2, 1975, the attorneys admitted to the plaintiff's president that they were negligent in filing the original incomplete application. On April 27, 1976, the U.S. Patent Office refused to register the plaintiffs' service mark. On August 27, 1976, the plaintiffs filed a legal malpractice action against the attorneys.

The *Ameraccount* Court said that the Court of Appeals erred in holding that the

statute of limitations began to run when the plaintiffs became aware of the attorneys' negligence because, "still more was required, viz., damage or injury to the plaintiff resulting from that negligence." *Ameraccount Club,* 617 S.W.2d at 878. The *Ameraccount* Court then addressed the question of when the attorneys' negligence caused an injury to the plaintiffs. The court held that, "Although the plaintiff may have been aware of the defendant attorneys' 'negligence' as early as August 18, 1975, or September 2, 1975, no damage or injury resulted to the plaintiff by reason of that 'negligence' until on or about April 27, 1976, when the United States Patent Office rejected the plaintiff's application." *Id.* The court went on to state that, "a cause of action against an attorney for a professional negligence accrued as of the date on which the negligence became irremediable." *Id.* at 879.

In *Security Bank & Trust Co. v. Fabricating, Inc.,* 673 S.W.2d 860 (Tenn.1983), the town of Grand Junction, Tennessee, issued industrial revenue bonds to finance the construction of a manufacturing plant. Charles Bruce and E.C. Holman personally guaranteed the bond issue. The town engaged a law firm to serve as bond counsel and to prepare an offering circular for use in the issuance and merchandising of the bond issue. Holman and Bruce's financial statements, purportedly prepared by a certified public accountant, were attached to the circular. The bond coupons falling due on October 1, 1974, defaulted. Bruce and Holman's financial statements misrepresented their assets, and a certified public accountant had not, in fact, prepared the statements. On February 10, 1975, Security Bank & Trust and the town of Grand Junction filed suit against Holman and Bruce. Walter Podrog, a bondholder, began a personal investigation into the reasons for the bond default from which he concluded that all involved in the promotion and sale of the bonds were at least negligent in permitting the false financial statements and apparent forged CPA certificates to be publicized and circulated as true. On September 30, 1975, he sent a letter to all bondholders in which he informed them of the findings of his investigation and suggested that, after the total losses of all the bond-

holders were determined, the bondholders should file a civil action against all involved including the defendant attorneys. On November 24, 1976, Podrog, as representative of the class of bondholders, filed a third-party complaint against the defendant law firm.

Affirming the Court of Appeals' dismissal of the bondholder's complaint, the Supreme Court held that:

> [T]he injury to the bondholders occurred on October 1, 1974, *when the bonds defaulted.* There is no merit whatever in the plaintiff's argument that their injury did not occur until the suit against the guarantors in Texas was concluded. A plaintiff cannot be permitted to wait until he knows all of the injurious effects as consequences of an actionable wrong.

*Id.* 673 S.W.2d at 864–65.

The court further determined that at least as of September 30, 1975, the bondholders knew that they had sustained an injury and were aware of the existence of their claim for malpractice or negligence against the bond counsel. *Id.* at 865. *See also Chambers v. Dillow,* 713 S.W.2d 896 (Tenn.1986).

This court has also addressed the issue of when a cause of action for legal malpractice accrues. In *National Mortgage Co. v. Washington,* 744 S.W.2d 574 (Tenn.App.1987), National Mortgage held a first deed of trust on Carl F. Hirlston's real property. The Veterans Administration ("VA") guaranteed payment of Hirlston's loan. In February of 1983, Hirlston filed a petition in bankruptcy, and National Mortgage employed the defendant attorneys to represent their interest in the bankruptcy proceeding. In July of 1983, a bankruptcy clerk for National Mortgage received a letter and a copy of a bankruptcy order that authorized National Mortgage to foreclose on the real property and provided that National Mortgage would make no claim against Hirlston for any deficiency arising out of the foreclosure sale of property. Apparently the attorneys had entered the order without National Mortgage's permission. National Mortgage sold the property and filed a deficiency claim with the VA. On January 17, 1985, in response to the VA's

request for information about the effect of the bankruptcy order, the attorneys informed the VA that National Mortgage's waiver of the deficiency also waived the VA's deficiency claim against Hirlston. National Mortgage received a copy of this letter. On July 17, 1985, the VA advised National Mortgage that it would not make payment under the guarantee because the deficiency waiver violated VA regulations. On September 10, 1985, National Mortgage filed suit against its attorney, and the court was faced with determining when National Mortgage's cause of action accrued. This court stated:

> Defendants ask us to assume that the plaintiff knew or should have known that its waiver of deficiency in a bankruptcy proceeding at the instance of its counsel would defeat its right to the VA guaranty payments. This we are unable to do. Defendants were hired to protect plaintiff's debt and entered an order without plaintiff's approval which ultimately had the effect of defeating payment of the debt. If the lawyer charged with the duty to protect plaintiff's debt was unaware of the ramifications of this order, is it reasonable to charge the layman relying on the attorney with such knowledge? We think not. Plaintiff first learned that the VA might be affected by the agreed order when it received a copy of Beckham's letter dated January 17, 1985. This was within one year of the date suit was filed.

*Id.* at 580.

This court went on to state:

> Furthermore, if we assume in this case that the plaintiff knew or should have known of defendant's negligence when plaintiff received a copy of the agreed order, there is nothing in the record before us to indicate that there was injury sustained by plaintiff until the VA declined to make payment under its guaranty. The record reflects that the VA considered National's claim for some time before finally denying payment.

*Id.* at 580–581.

Returning to the facts of the instant case, three events had to occur before Caledonia Leasing's cause of action against Armstrong, Allen accrued: (1) Armstrong, Allen must have committed negligence; (2) Caledonia Leasing must have suffered injury as a result of Armstrong, Allen's negligence; and (3) Caledonia Leasing must have discovered, or in exercise of reasonable care and diligence should have discovered, the existence of facts constituting Armstrong, Allen's negligence and the injury caused by the negligence.

The parties agree that Armstrong, Allen's alleged negligent acts occurred in September and/or October of 1982.

Caledonia Leasing argues that it did not suffer injury or discover Armstrong, Allen's negligence and the injury caused by its negligence until after March 15, 1984, the date the Trustee filed the adversary proceeding to set aside Caledonia Leasing's deeds of trust as preferential transfers. Caledonia Leasing argues that the possibility of injury prior to March 15, 1984, was speculative, not capable of ascertainment, and not susceptible to proof in a court of law. Caledonia Leasing relies on *Ameraccount Club, supra,* and *Rayne State Bank & Trust v. National Union Fire Ins.*, 483 S.2d 987 (La.1986). In *Rayne State Bank,* the Louisiana Supreme Court addressed the issue of when an attorney's failure to properly secure a loan injures the client lender. In January of 1979, Rayne State Bank made a loan to two borrowers. Chambers, the bank's attorney, drafted deeds of trust which were executed by the borrowers to secure the loans. Over a year later, the bank received notice that the deeds of trust were possibly defective because they did not state the location of the mortgaged property. In January of 1981, the bank instituted foreclosure proceedings, the borrowers declared bankruptcy, and the Bankruptcy Trustee filed an adversary proceeding against the bank seeking to have the deeds of trust declared invalid. Rayne State Bank subsequently filed a malpractice action against Chambers. The Louisiana Court of Appeals affirmed the lower court's dismissal of the case, stating that the bank's injury had occurred when the invalid deeds of trust were executed and that the bank discovered their injury when it was notified of the possible defects in the deeds of trust. The Louisiana Supreme Court reversed, stating that,

Until the debtors in possession, who were vested with the avoidance powers of a trustee in bankruptcy thus becoming in effect third parties to the loans, attacked the deeds of trust and sought to have them declared invalid, the possibility of damage to the bank resulting from the defects in the mortgages was speculative, not capable of ascertainment, and certainly not susceptible to proof in a court of law....

*Id.* at 996.

Armstrong, Allen argues that Caledonia Leasing suffered injury on February 9, 1983, when Gordon Transports filed for bankruptcy because its bankruptcy estate included property brought into the estate as preferential transfers and that Gordon Transports, as debtor in possession, was required to file suit to avoid Caledonia Leasing's interest as a preferential transfer. Armstrong, Allen further argues that its alleged negligence was "irremediable" because Caledonia Leasing could take no further action to change the status of the deeds of trust as preferential transfers. In the alternative, Armstrong, Allen argues that Caledonia Leasing sustained injury in the fall of 1983 when the Trustee escrowed the sale proceeds from the real property on which Caledonia Leasing held deeds of trust. Armstrong, Allen argues that Caledonia Leasing incurred injuries in the form of attorney's fees, loss of use of the sale proceeds held in escrow, and a decrease in value of the deeds of trust.

In addition to the pleadings, the record contains the affidavits of the Bankruptcy Trustee and Thomas and the depositions of McClain Gordon and Richard H. Allen. This evidence primarily focuses on whether Caledonia Leasing knew that the Trustee would challenge the deeds of trust as preferential transfers. The Trustee said that he "believe[d]" that he discussed the problem of whether Caledonia Leasing's deeds of trust were preferential transfers with Thomas during one of several phone conversations on July 20, 1983. Thomas said that the Trustee did not inform him that the reason for escrowing the sale proceeds was because he intended to challenge the deeds of trust as preferential transfers. Thomas said that the Trustee only mentioned the sale of Caledonia

Leasing stock and the rise in the level of lease payments as reasons for escrowing the funds.

Gordon stated that, although he was aware in the fall of 1984 that Armstrong, Allen filed the deeds of trust approximately twenty to thirty days after the loan, he was unaware of any problem with the validity of the trust deeds until the Trustee filed the complaint to set aside the trust deeds as preferential transfers. Gordon stated that he did not recall any discussions about whether Caledonia Leasing's deeds of trust were preferential transfers with the attorneys who counseled Gordon Transports on the Chapter 11 and Chapter 7 bankruptcy filings. He stated that he knew that the Trustee escrowed the sale proceeds and was conducting an investigation into the level of lease payments between Caledonia Leasing and Gordon Transports but did not know of any other specific reasons for the investigation.

Allen, the attorney engaged by Caledonia Leasing to record the deeds of trust, also represented Gordon Transports in the sale of its terminals during the bankruptcy proceeding. Allen stated that he did not discuss with the Bankruptcy Trustee any other reasons for escrowing the sale proceeds from Gordon Transports terminals other than the reasons listed in the Trustee's motion. Allen stated that when Gordon Transports filed bankruptcy he thought there was a "possibility" that the Trustee would investigate the mortgage because any trustee would conduct such an investigation. He said that the sale of Gordon Transports' terminals and the subsequent escrowing of the sale proceeds caused him to believe that there was a "probability" that the Trustee would attack Caledonia Leasing's deeds of trust. Allen stated, however, that at all times up until 1985 he thought that any attack of the Trustee would be unsuccessful because the deeds of trust were substantially contemporaneous with the transfer and that Caledonia Leasing's loan of funds to Gordon Transports was good consideration and would support the deeds of trust. Allen stated that the first time he knew that the Trustee was going to attack the deeds of

trust as preferential transfers was when the Trustee filed the adversary proceeding.[2]

After careful review of precedent and consideration of the parties' arguments and the evidence, we reverse the judgment of the trial court for two independent reasons, either of which will support our reversal. First, Armstrong, Allen's alleged negligence became "irremediable" and Caledonia Leasing suffered injury on March 15, 1984, when the Trustee filed a complaint to set aside its deeds of trust as preferential transfers. Prior to March 15, 1984, any injury to Caledonia Leasing was speculative, uncertain and contingent on a third party attack in the validity of the deeds. The plaintiff suffered injury in *Ameraccount Club* when the United States Patent Office rejected the plaintiff's application, in *Security Bank & Trust* when the bonds defaulted and in *National Mortgage* when the VA refused to pay the deficiency claim, and in this case, when the Trustee filed suit challenging the validity of the trust deeds. The Tennessee cases, *supra,* instruct that the mere possibility or probability of injury, such as in this case, is not enough for a cause of action for legal malpractice to accrue. Caledonia Leasing suffered injury in fact when it was forced to defend the validity of the deeds against the Trustee's attack.

The full extent of Caledonia Leasing's injuries was dependent upon whether the deeds of trust were preferential transfers or the resolution of the Trustee's action.

Armstrong, Allen's arguments assume that Caledonia Leasing's deeds of trust were automatically preferential transfers when Gordon Transports filed bankruptcy. Those arguments overlook that the Trustee first had to determine whether or not he could challenge the validity of the deeds of trusts. We are aware that the Bankruptcy Code requires debtors in possession as well as trustees to act in good faith and on behalf of a debtor's creditors and that this duty often compels them to file suits to set aside transfers as preferences when they determine that they have a sufficient basis on which to file suit. We think, however, that any injury suffered by a debtor prior to a trustee's determination that a transfer might be a preference is too speculative and uncertain for purposes of determining when a legal malpractice action accrues. The attorney's fees incurred by Caledonia Leasing prior to the Trustee's suit, as well as the other injuries asserted by Armstrong, Allen, were related to bankruptcy matters other than or in addition to any injuries that may have result-

---

2. Apparently, the uncertainty as to whether Caledonia Leasing's deeds of trust were preferential transfers is related to the Sixth Circuit Court of Appeals' decision in *In re: Arnett,* 731 F.2d 358 (6th Cir.1984). Prior to *Arnett,* one line of Sixth Circuit cases had held that § 547(c)(1) was cumulative with § 547(c)(3), so that a transfer that occurred more than ten days after cash advance, which would not qualify under § 547(c)(3), could be deemed substantially contemporaneous under § 547(c). *Id.* at 362. The *Arnett* court followed a line of cases holding an opposing view and held that the ten-day limit for the perfection of purchase money security interests in subsection (c)(3) should be read to require a similar ten-day period for perfection of nonpurchase money security interests analyzed for contemporaneity under subsection (c)(1). *Id.* at 364. Section 547(c) provides that:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee:

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

(3) that creates a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected on or before 10 days after the debtor receives possession of such property;

. . .

11 U.S.C.A. 547(c) (West Supp.1992).

**18**

ed to Caledonia Leasing as a direct result of Armstrong, Allen's negligence.

■ Second, the evidence in the record establishes that whether Caledonia Leasing discovered or, in the exercise of reasonable care and diligence, should have discovered an injury resulting from Armstrong, Allen's alleged negligence is a genuine issue of material fact, making a summary judgment disposition inappropriate. Even assuming that Caledonia Leasing's deeds of trust were preferential transfers and that the date of Gordon Transports' bankruptcy filing is the date of injury, the evidence in the record establishes that whether Caledonia Leasing should have known that the deeds of trust were preferential transfers is a material issue of fact. The Trustee's motions to sell Gordon Transports' terminals and escrow the sale proceeds, while stating some investigatory matters specifically, do not specifically state that the Trustee is investigating a cause of action against Caledonia Leasing to avoid their deeds of trust as preferential transfers. While Gordon and Thomas knew the deeds were filed twenty to thirty days after the loan was made, they did not know of problems with the validity of the deeds. Finally, Allen, the attorney who filed the deeds of trust, specifically stated that any attack on the trust deeds would be unsuccessful because the trust deeds were substantially contemporaneous with, and good consideration for, Caledonia Leasing's loans. *See National Mortgage, supra.*

We reverse the judgment of the trial court and remand for further proceedings. Costs on appeal are taxed to Armstrong, Allen.

TOMLIN, P.J., (Western Section), and CRAWFORD, J., concur.