# IN THE COURT OF APPEALS OF TENNESSEE,
## AT NASHVILLE

_____

|  |  |  |
|---|---|---|
| **CARVER PLUMBING COMPANY, INC.**, | ) | Davidson County Circuit Court No. 95C-2130 |
|  | ) |  |
| Plaintiff/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 01A01-9708-CV-00377 |
|  | ) |  |
| **MARTHA CONE BECK**, | ) |  |
|  | ) |  |
| Defendant/Appellee. | ) |  |
|  | ) |  |

**FILED**

**April 8, 1998**

**Cecil W. Crowson
Appellate Court Clerk**

From the Circuit Court of Davidson County at Nashville.
**Honorable Walter C. Kurtz, Judge**

**John L. Whitfield, Jr.**, MOODY, WHITFIELD & CASTELLARIN, Nashville, Tennessee
Attorney for Plaintiff/Appellant.

**Winston S. Evans**, EVANS, JONES & REYNOLDS, Nashville, Tennessee
Attorney for Defendant/Appellee.

OPINION FILED:

**REVERSED AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**LILLARD, J.**: (Concurs)

Plaintiff Carver Plumbing Company, Inc. (Carver Plumbing), appeals the trial court's order entering summary judgment in favor of Carver Plumbing's former attorney, Defendant/Appellee Martha Cone Beck (Beck). We reverse the trial court's judgment based on our conclusion that a genuine issue of material fact exists as to whether Carver Plumbing's action against Beck is barred by the one-year statute of limitations applicable to legal malpractice actions.

For purposes of these summary judgment proceedings, the following facts were undisputed. In March 1993, Carver Plumbing retained Beck to collect money it was owed for work performed on a renovation project at the International Plaza building in Nashville. Premier Builders was the general contractor on the renovation project, and Carver Plumbing was one of the subcontractors which performed work on the project pursuant to a subcontract with Premier Builders. The International Plaza building was owned by Equitable Pacific Partners. After Carver Plumbing performed the work as agreed, Premier Builders failed to pay it the balance due under the subcontract. Consequently, Carver Plumbing retained Beck.

Robert Carver, the president of Carver Plumbing, initially met with Beck when he hired her. During this meeting, Carver told Beck that he wanted to file a lien against the property. This was the first time that either Carver or Carver Plumbing had found it necessary to file a mechanic's lien, and Carver's knowledge of such liens was limited. Throughout Beck's representation of Carver Plumbing, Carver communicated with Beck's assistants. Primarily, Carver dealt with Beck's son and legal assistant, Bill Beck.

After being retained by Carver Plumbing, Beck prepared and filed a "Notice for Furnisher's Lien" on March 15, 1993, in which Beck notified both Equitable Pacific Partners and Premier Builders that Carver Plumbing was claiming and holding a mechanic's lien on the International Plaza building in the amount of $17,000. The notice, which was signed by Robert Carver, erroneously indicated that Carver Plumbing was claiming a mechanic's lien pursuant to Tennessee Code Annotated section 66-1-101 *et seq*. The statutes establishing Carver Plumbing's right to a mechanic's lien actually were codified at section 66-11-101 *et seq*. *See* T.C.A. §§ 66-11-101 to 66-11-208 (1993).

In April or May of 1993, Robert Carver became upset when he heard that other subcontractors were collecting money for their work on the project. When Carver confronted Bill Beck about this development, Carver was assured that Beck was doing everything she could to collect the money owed to Carver Plumbing. Sometime in 1993, although it is not clear when, Carver and Bill Beck engaged in a heated argument over Beck's handling of Carver Plumbing's case. During this argument, Bill Beck advised Carver to hire another lawyer if he did not like the way Beck was handling the case. Carver consulted another attorney but the second attorney advised Carver to stay with his original attorney if possible because she had all of the case records and documents. When Carver called Beck's office to request the Carver Plumbing file, Bill Beck, who by then had calmed down, asked Carver to return to the office to talk. Thereafter, Beck continued to represent Carver Plumbing.

Under the Tennessee statute relative to mechanic's liens, Beck had ninety (90) days from the time of filing notice of the lien in which to file suit to enforce the lien. *See* T.C.A. § 66-11-115(c) (1993) (providing that mechanic's lien shall continue for 90 days from date of notice and that, if suit for enforcement is brought within 90-day period, lien shall continue until termination of suit). Despite this statute, Beck failed to file a suit to enforce the lien against the building's owner, Equitable Pacific Partners, within the 90-day period.

In November 1993, Beck filed a lawsuit on behalf of Carver Plumbing against the project's general contractor, Premier Builders. That same month, another one of Beck's legal assistants sent a copy of the complaint with a transmittal letter to Robert Carver. The face of the complaint indicated that the only entity being sued was Premier Builders and, in fact, the complaint did not even mention Equitable Pacific Partners. In May 1994, a default judgment was entered against Premier Builders. Ultimately, the default judgment proved to be uncollectible because Premier Builders filed for bankruptcy.

On January 19, 1995, Beck wrote a letter to Robert Carver in which she advised him of the status of his case. As pertinent to this legal malpractice action, Beck's letter contained the following paragraph:

> It is my understanding from talking with Bill [Beck] that you did not wish to bring suit against Equitable Pacific Partners because a relative of yours worked for them. Based on this desire we did not include Equitable Pacific in the lawsuit and the time has now passed in which we can now file suit against them.

According to Carver, his receipt of this letter was the first time he realized (1) that Carver Plumbing had a potential lawsuit against Equitable Pacific Partners and (2) that Beck had failed to file such a lawsuit within the time required by law.

On July 5, 1995, Carver Plumbing filed this action for legal malpractice against Beck in which it asserted that Beck was negligent in failing to file a lawsuit against Equitable Pacific Partners within the statute of limitations for enforcement of the mechanic's lien. After filing her answer, Beck filed a motion for summary judgment in which she contended, *inter alia*, that Carver Plumbing's action was barred by the one-year statute of limitations applicable to legal malpractice actions. *See* T.C.A. § 28-3-104(a)(2) (Supp. 1990). In moving for summary judgment, Beck submitted the affidavits of herself and Bill Beck, which averred that Beck did not file a suit against Equitable Pacific Partners to enforce the lien because Robert Carver instructed them not to file such a suit. According to the Becks, Carver did not wish to sue Equitable Pacific Partners because Carver's brother-in-law worked for the partnership as manager of the International Plaza building.

In his opposing affidavit and deposition, Robert Carver denied ever giving these instructions to Beck or to any of her assistants, and he averred that he instead instructed Beck to sue "whoever had to be sued" to collect the money. Carver was aware that Beck, on Carver Plumbing's behalf, filed a lawsuit against Premier Builders in the fall of 1993. Carver also acknowledged that the documents filed in the lawsuit revealed that the only defendant was Premier Builders and, further, that Carver received no documents indicating that a suit had been filed against the building's owner, Equitable Pacific Partners. Carver explained, however, that he was not even aware that Carver Plumbing had a potential lawsuit against Equitable Pacific Partners. This was Carver's first experience with filing a mechanic's lien, and Carver's understanding of such liens was limited to the knowledge that the claimant was required to "[j]ust put a lien on the property and sue." Carver relied on Bill Beck's representations that Beck was doing everything she could to pursue Carver Plumbing's claim. Carver also relied on Beck's professional knowledge and expertise to pursue

Carver Plumbing's claim against the appropriate parties. Carver maintained that he did not learn of Beck's failure to timely pursue a potential claim against Equitable Pacific Partners until Carver received Beck's letter of January 19, 1995. Specifically, Carver testified that

> Again, I was told everything was being done that could be done. I didn't know. You know, I didn't know about a lawsuit against [Equitable Pacific Partners]. I thought -- I didn't know you could file a lawsuit against them. I was relying on [Beck] to represent me to do whatever it took to collect my money.

Based on the foregoing evidence, the trial court granted Beck's motion for summary judgment, ruling that Carver Plumbing's legal malpractice action was untimely because Robert Carver either knew or should have known as early as 1993 that Beck had failed to file a suit to enforce the lien against Equitable Pacific Partners within the time required by law. This appeal followed.

In reviewing the trial court's decision, we are reminded that summary judgment is appropriate only when the parties' "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." T.R.C.P. 56.04. In determining whether or not a genuine issue of material fact exists for purposes of summary judgment, the trial court is required to consider the question in the same manner as a motion for directed verdict made at the close of the plaintiff's proof. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). That is, "the trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id*. at 210-11.

Our review of the trial court's decision also is guided by a series of Tennessee Supreme Court decisions, which have developed a specific formulation of the "discovery rule" applicable to the issue of when a legal malpractice action accrues for statute of limitations purposes. *See Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn. 1995); *Chambers v. Dillow*, 713 S.W.2d 896 (Tenn. 1986); *Security Bank & Trust Co. v. Fabricating, Inc.*, 673 S.W.2d 860 (Tenn. 1983), *cert. denied*, 469 U.S. 1038 (1984); *Ameraccount Club, Inc. v. Hill*, 617 S.W.2d 876 (Tenn. 1981). In the most

recent of these decisions, the supreme court concluded that the "legal malpractice discovery rule" is composed of two distinct elements: (1) the plaintiff must have suffered a legally cognizable or actual injury as a result of the defendant's negligence; and (2) the plaintiff either must have known or in the exercise of reasonable diligence should have known that the injury was caused by the defendant's negligence. *Carvell v. Bottoms*, 900 S.W.2d at 28.

In the present case, the parties do not dispute that Carver Plumbing suffered a legally cognizable injury in June 1993, when the 90-day time period for filing a suit to enforce the mechanic's lien expired. *See, e.g.*, *Smith v. Petkoff*, 919 S.W.2d 595, 597 (Tenn. App. 1995) (holding that plaintiff suffered "actual injury" or "legally cognizable injury" on date statute of limitations ran as to underlying claim). Accordingly, this appeal focuses on the second element of the discovery rule and requires this court to determine only one issue: whether Robert Carver knew or in the exercise of reasonable diligence should have known more than one year prior to filing the present lawsuit that Carver Plumbing suffered an injury as a result of Beck's negligence.

In discussing this second element, the supreme court has indicated that the "knowledge" component of the discovery rule may be supported by evidence of actual or constructive knowledge of the injury. *Carvell v. Bottoms*, 900 S.W.2d at 29. As a general rule, the one-year statute of limitations for legal malpractice actions begins to run when the plaintiff has actual knowledge that he has been injured as a result of the defendant's breach of the appropriate legal standard. *Id*. Under the theory of constructive knowledge, however, the statute of limitations may begin to run at an earlier date if the evidence shows that the plaintiff is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of the defendant's wrongful conduct. *Id*.

In *Gatlinburg Summit Horizontal Property Regime Council of Co-Owners, Inc. v. Jarvis*, No. 03A01-9404-CV-00135, 1995 WL 10343 (Tenn. App. Jan. 11, 1995), this court similarly was faced with the issue of when the statute of limitations for legal malpractice begins to run where the alleged injury is the attorney's failure to file an action within the applicable statute of limitations. In that case, the plaintiff's attorneys failed to file a suit for construction defects against an architectural firm within the applicable three-year statute of limitations. *See* T.C.A. § 28-3-105(1)

(Supp. 1989). When the suit was filed against the architectural firm in federal court, the plaintiff did not know that the suit was untimely because one of the plaintiff's attorneys erroneously advised the plaintiff that the statute of limitations for construction defects was four years instead of three. *Gatlinburg Summit*, 1995 WL 10343, at \*1. The plaintiff first learned that the suit might be untimely when the architectural firm filed its answer asserting the affirmative defense of the three-year statute of limitations. *Id*. The untimeliness of the suit was confirmed when the federal district court granted summary judgment to the architectural firm based on this defense. *Id*. Sometime later, the plaintiff brought a suit for legal malpractice against its attorneys based on their failure to timely file the suit for construction defects against the architectural firm. *Id.*, at \*2.

In holding that the statute of limitations for legal malpractice began to run when the architectural firm filed its answer asserting the statute of limitations defense in the underlying action, this court reasoned:

> Our study of the various cases dealing with the question under consideration here leads us to the conclusion that each case must be determined individually and under its own peculiar circumstances. Stated differently, there is no rule that can be universally applied to determine when the statute of limitations in legal malpractice actions commences to run.

> . . . it would appear that the [plaintiff] in this case knew or should have known, by the exercise of reasonable care and diligence, that the alleged malpractice had occurred when the [architectural firm] in the Federal District Court case filed [its] answer asserting the affirmative defense of the statute of limitations. . . .

> We are of the opinion and hold that the statute of limitations began to run on the date the [architectural firm] in the Federal District Court answered asserting the affirmative defense of the three-year statute of limitations. At that time, (1) the attorneys had committed negligence, (assuming that the allegations of negligence are true for the purposes of this appeal) (2) the client had been injured by the negligence because the statute had expired . . . , and (3) the [plaintiff] had discovered, or in the exercise of reasonable care and diligence, should have discovered, the existence of the facts constituting negligence and injury or damage caused by the attorneys' negligence.

> In *Caledonia Leasing and Equipment Co., Inc. v. Armstrong, et al*, 865 S.W.2d 10 (Tenn. App. 1992), we find the following teaching:

>> A cause of action for legal malpractice accrues and the statute of limitations commences to run when (1) the attorney has committed negligence, (2) the client has been injured by that negligence, and (3) the client discovers, or in the exercise of reasonable care

and diligence, should have discovered the existence of
the facts constituting negligence and the injury caused
by the attorney's negligence. (citations omitted).

In the final analysis, we are of the opinion that all the
requirements of *Caledonia* were met when the [plaintiff] learned that
the [architectural firm was] relying on the three-year statute of
limitations as a bar to . . . [the plaintiff's] action.

*Gatlinburg Summit*, 1995 WL 10343, at *3.

After carefully reviewing the evidence presented in this case, we conclude that a

genuine issue of material fact exists as to whether Robert Carver knew or should have known more

than one year prior to filing this legal malpractice action that Beck had committed negligence and

that this negligence had caused injury to Carver Plumbing. When viewed in the light most favorable

to Carver Plumbing, this evidence reveals that Carver instructed Beck to sue "whoever had to be

sued" to collect the money that Premier Builders owed to Carver Plumbing. Instead of filing suit to

enforce the lien against Equitable Pacific Partners within the 90-day time limit, Beck later sued only

Premier Builders to recover the debt. Carver was not aware, nor did Beck apparently advise Carver,

that a suit to enforce the lien could be filed against the building's owner, Equitable Pacific Partners.

Accordingly, Carver did not question Beck's decision in the fall of 1993 to sue only Premier Builders

and no other party. Carver was relying on Beck's professional knowledge and expertise to handle

Carver Plumbing's case and, until he received Beck's letter of January 19, 1995, Carver was unaware

that a lawsuit also could have been pursued against Equitable Pacific Partners. Under these

circumstances, a genuine issue of material fact remains as to whether Carver knew, or in the exercise

of reasonable diligence should have known, prior to receipt of the January 19, 1995, letter (1) that

Carver Plumbing had a potential lawsuit against Equitable Pacific Partners, and (2) that the

applicable statute of limitations for filing such a lawsuit had expired.

In reversing the trial court's order granting summary judgment to Beck, we

distinguish the facts of this case from those found in *Banton v. Marks*, 623 S.W.2d 113 (Tenn. App.

1981). In *Banton v. Marks*, the defendant attorneys timely brought a cause of action against the

driver of the vehicle who caused the wrongful death of the plaintiff's husband, but the attorneys

failed to sue the treating hospital or physician within the applicable statute of limitations for medical

malpractice actions. ***Banton v. Marks***, 623 S.W.2d at 114. Thereafter, the plaintiff sued her attorneys for legal malpractice. ***Id***. In affirming the trial court's grant of summary judgment to the defendant attorneys, this court first noted the legal presumption that the plaintiff was deemed to know the law, ***i.e.*** the applicable statute of limitations for medical malpractice actions. ***Id***. at 115. Inasmuch as the plaintiff knew that the defendants had not filed a medical malpractice action on the date that the statute of limitations expired, we held that the plaintiff either discovered or reasonably should have discovered the attorneys' negligence on that date. ***Id***. at 116. In contrast to the present case, however, the plaintiff in ***Banton v. Marks*** knew that she had a cause of action against the hospital and physician who treated her husband and, in fact, the plaintiff had requested her attorneys on numerous occasions to bring a medical malpractice action against these parties. ***Id***. at 114. Here, even if we presumed that Carver was aware of the statutory time limit for enforcing the lien, this knowledge would have been meaningless absent the accompanying knowledge that Carver Plumbing had a right of action against Equitable Pacific Partners under the statute, a knowledge Carver disavowed having until receipt of Beck's January 19, 1995, letter.

For similar reasons, we reject Beck's contention that Robert Carver had at least constructive knowledge of the alleged malpractice at various times throughout 1993, such as when Carver began expressing dissatisfaction with Beck's representation of Carver Plumbing or when Carver received copies of court documents indicating that suit had been filed only against the general contractor, Premier Builders. In this regard, we first note that the evidence in the record does not make clear whether Carver's dissatisfaction with Beck's services preceded or followed the expiration of the 90-day limitations period for filing suit to enforce the lien. Inasmuch as Carver Plumbing suffered no legally cognizable injury until the limitations period expired, we question the relevance of any dissatisfaction expressed by Carver prior to the expiration of this period. At most, we believe that this evidence creates a question of fact as to whether Carver should have had notice of Beck's impending negligence. ***See, e.g.***, ***Woods & Woods v. Lewis***, 902 S.W.2d 914, 917 (Tenn. App. 1994) (holding that, despite client's dissatisfaction with services of attorney, where client was layman without expertise as to professional standards for attorneys, and was not subject to any startling development in proceedings which would suggest negligence of his attorney in handling case, jury question was presented as to whether client knew or reasonably should have known that his defense was being neglected). We also do not think that Carver's knowledge of the lawsuit

against Premier Builders in the fall of 1993 is determinative of the issue of Carver's knowledge of Beck's negligence. If, as Carver claims, he was neither apprised nor aware prior to January 1995 that Carver Plumbing had a right of action against Equitable Pacific Partners, the court documents from the suit against Premier Builders would not necessarily serve to inform Carver that Beck negligently had failed to file a lawsuit against Equitable Pacific Partners.

In reversing the trial court's judgment, we also feel compelled to expound upon the legal presumption that "everyone is deemed to know the law." *Banton v. Marks*, 623 S.W.2d at 115. In *Banton v. Marks*, we applied this presumption to hold that a legal malpractice plaintiff is deemed to know the statute of limitations for the underlying action in which the attorney represented the plaintiff. *Id*. We acknowledged, however, that this legal presumption was not a "weighty" one. *Id*. Significantly, this presumption was mentioned but apparently was not applied in *Gatlinburg Summit*, where the plaintiffs were erroneously advised by one of their attorneys as to the length of the applicable statute of limitations. In our view, the foregoing legal presumption also does not apply to the question of whether a plaintiff has a potential cause of action against a particular defendant. Such a question invariably implicates both legal and factual considerations, and it is for the determination of this question that a plaintiff consults and relies upon an attorney in the first instance. We conclude, therefore, that Carver's presumed knowledge of the 90-day limitations period, by itself, is not sufficient to insulate Beck from liability in this case.

In her answer brief, Beck has raised an additional issue as to whether Carver Plumbing's recovery should be limited to $2,000 in the event that its suit for legal malpractice is successful on remand. Inasmuch as the trial court did not rule on this issue, we decline to address this issue on appeal. "This court, being a court of errors, cannot review issues not presented *and ruled upon* by the trial court." *King v. Now Invs., Inc.*, 1987 WL 18891, at *2 (Tenn. App. Oct. 27, 1987) (emphasis added), *perm. app. denied* (Tenn. Feb. 1, 1988); *see also Moss Hotel Co. v. Soil & Material Eng'rs, Inc.*, No. 03A01-9102-CV-00044, 1991 WL 96576, at *1 (Tenn. App. June 10, 1991), *perm. app. denied* (Tenn. Feb. 18, 1992).

The trial court's order granting Beck's motion for summary judgment is reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are

taxed to Beck, for which execution may issue if necessary.

_____

FARMER, J.


_____

HIGHERS, J. (Concurs)


_____

LILLARD, J. (Concurs)