IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 24, 2021 Session

## JOSEPH RICCARDI v. CARL LITTLE CONSTRUCTION COMPANY, INC. ET AL.

### Appeal from the Circuit Court for Washington County
### No. 33592       Jean A. Stanley, Judge

### No. E2020-00678-COA-R3-CV

Plaintiff Joseph Riccardi brought this action for negligent construction of his residence against Carl Little Construction Company ("Defendant"), builder of the residence, and the Bridgewater Condominiums Property Owners Association ("Bridgewater POA"). He alleged that Defendant negligently built the residence on non-compacted fill dirt, causing structural and cosmetic damages to the residence. Plaintiff alleged that Bridgewater POA was contractually responsible for repairs to the exterior of the residence. The trial court granted summary judgment to Defendant based on its finding that the statutes of limitation and repose had run. The court held that Bridgewater POA was liable for repairs to the porches and patios of the property, but not the foundation or the cracks in the interior. We vacate summary judgment against Defendant, finding that Plaintiff presented evidence sufficient to establish genuine issues of material fact regarding when Plaintiff's cause of action accrued and whether Defendant fraudulently concealed the defects in the residence. We affirm the judgment against Bridgewater POA.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Vacated in Part; Case Remanded

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Thomas C. Jessee, Johnson City, Tennessee, for appellant, Joseph Riccardi.

Christopher D. Owens, Johnson City, Tennessee, for appellee, Carl Little Construction Company, Inc.

Frank A. Johnstone, Kingsport, Tennessee, for appellee/cross-appellant, Bridgewater Condominiums Property Owners Association.

# OPINION

## I. BACKGROUND

Plaintiff purchased the residence on October 26, 2007. The parties do not dispute that the residence was substantially complete on that date. Shortly after he moved in, Plaintiff began noticing cracks in the interior of the residence in certain areas. He also "experienced problems with the upstairs bathroom doors not closing properly." Plaintiff testified that for the first couple of years after the sale, Defendant "was very good about sending the painter, his contractor to constantly repair all the cracks and paint, make it look real nice and fix the doors." The cracks kept reoccurring, and Plaintiff further testified that

> [a]fter about a year and a half, two years of this, I finally called Mr. Little and I said, "You have got to come up here. I need you to talk to me about why I'm getting all these cracks." So he came and we sat in the living room and he told me that this is all due to natural settling. He said that, it's difficult for a home, and he said that he's "seen homes continue settling for ten years." And so he assured me that these are just, this is just naturally occurring settling of the home.

Carl Little is the sole shareholder of Defendant, Carl Little Construction Company, Inc. He testified that he was personally in charge of the day-to-day construction of the residence and that he was there on the job site each day of construction. Plaintiff stated that when he asked Mr. Little about the cracks and other observable issues with the residence, Mr. Little told him "that's just natural settling, just don't worry about it. It will all settle down and you're not going to have any problems." Mr. Little reassured Plaintiff that "it's typical for a home to be settling like this." Plaintiff said that Defendant "repaired the cracks and attempted to adjust the doors until mid-2011," at which time Mr. Little "referred me to their drywall company for any future repairs."

According to Plaintiff, in 2012 the cracks seemed to subside but "reappeared at the end of 2012." He testified that "toward 2012 they started to slow down a little bit. So I actually believed what Mr. Little had said, well, maybe things are starting to settle down and the house is beginning to settle in and stabilize." However, in November of 2012, "cracks began opening up all over the house." In October of 2013, Plaintiff asked Matt Means, a homebuilder, to come out and look at his residence. Mr. Means examined the exterior of the condominium and "shook his head," saying "you've got some problems [and] you need to see somebody."

Plaintiff testified that in March of 2014, the following took place:

2

Q: And you're claiming that Carl Little concealed from you the fact that those footers and the foundation was poured on un-compacted fill dirt, is that what you're saying?

A: He revealed, for the very first time, that, when a question was asked by a man named Scott Frazier from Master Dry. I called Carl when Master Dry was out there to take a look at the foundation. And Scott Frazier asked him about all the fill dirt that was out there. He said, "I've seldom seen so much fill dirt." And Carl apparently said, "well, yeah, we had to fill in a lot out there." And Mr. Frazier from Master Dry asked him about, well, "Do you have a compaction study, a compaction report for the fill dirt that you placed here below the footer for the foundation?" And Mr. Little replied to Mr. Frazier, "I never did a compaction report." So that was the first time I knew or had an inkling that there was an issue going on with the actual structural integrity of the house.

Mr. Little, in his response to Plaintiff's statement of undisputed material facts, did not dispute Plaintiff's assertion that Mr. Little "told Mr. Frazier, in the plaintiff's presence, that he had built the plaintiff's residence on un-compacted fill dirt."

Plaintiff hired Corum Engineering to inspect the residence and do a structural evaluation on April 17, 2014. A week later, Corum Engineering issued its report, which stated in pertinent part:

The basement has drywall cracks and shearing near the rear wall area on the left side of the home. The drywall cracks appear to be caused by the excessive settlement of the foundation walls located on the rear right corner of the home. This area seems to have been placed on fill that may have not been engineered or compacted during the original construction. This has also caused several foundation block cracks along the left side of the rear wall and the left wall. . . . The rear porch is also sinking that may be caused by putting the porch foundation on non-engineered or compacted fill.

(Numbering and citations to attached photographs in original omitted).

On September 9, 2014, Plaintiff filed his complaint in this lawsuit. As noted, he alleged that Bridgewater POA was "obligated to repair and/or replace the damage to the exterior of the plaintiff's residence." Bridgewater POA filed a cross-claim against Defendant for indemnity. After discovery, Defendant moved for summary judgment, arguing that Plaintiff filed suit after the running of the three-year statute of limitations for injuries to property, Tenn. Code Ann. § 28-3-105, and the four-year statute of repose for

deficient construction, Tenn. Code Ann. § 28-3-202. Plaintiff responded by asserting there are genuine issues of material fact regarding when his cause of action accrued under the discovery rule, whether the limitations period should be tolled due to equitable estoppel and/or fraudulent concealment, and whether the statute of repose was inapplicable due to Mr. Little's wrongful concealment of Plaintiff's cause of action. In a supplemental response to the summary judgment motion, Plaintiff filed a structural damage evaluation done by engineer George Cross that observed "very steep ground conditions" along the rear and left sides of the residence, and noted that "fill soil was placed during the original construction on the property." The report stated:

> The core No. 1 location encountered two concrete slabs sections under the basement area of the home. The second concrete encountered did not appear to be a foundation for an adjacent interior wall. This condition is abnormal and may indicate that the original floor slab elevation was changed or that significant downward settlement of the original slab occurred.

> The deferential elevations measured in the basement slab indicates that downward settlement has occurred over time. The settlement is due primarily to deterioration of the shale/rock fragments that were placed as fill material within the perimeter foundation walls of the structure and underneath the basement slab floor. Based on the size of the shale fragments, little compaction effort appears to have been performed. The soil fill should have been broken down and compacted during its placement. The differential elevations recorded may under estimate the total settlement movement. The downward movements in the basement slab has caused corresponding downward movement in the main level floor.

> It is our opinion that some continued downward movement of the basement slab will occur over time.

> *     *     *

> The rear patio has experienced significant settlement and outward movement away from the rear foundation wall of the house with a corresponding downward movement in the wood framed sunroom above. The movement is due to differential foundation settlement. It appears that poor construction methods were utilized, including placement of foundations on poorly compacted fill soil on steep ground conditions.

The engineer's report concluded that the needed structural repairs "would be expensive and require significant disturbance of the interior of the structure."

4

The trial court granted Defendant summary judgment by order entered on November 6, 2017, finding and holding as follows:

It is undisputed that plaintiff noticed damage to the property during the first year after its purchase in 2007. Plaintiff initially contacted defendant with a "warranty claim" within the first 2 years of the purchase of the home. It is undisputed that plaintiff testified that the "root cause" of the issues with the home was that defendant built the home on uncompacted fill dirt.

Plaintiff argues that Little should be estopped from relying on the statute of limitations defense under the doctrines of fraudulent concealment or equitable estoppel. This requires plaintiff to prove that the defendant took affirmative action to conceal the cause of action and that plaintiff could not have discovered such cause of action despite exercising reasonable diligence. Equitable estoppel would toll the running of the statute of limitations where Little has misled the plaintiff into failing to file his cause of action within the statutory limitation.

It is undisputed that Little worked on the home at different times over the years after receiving plaintiff's complaints. Plaintiff says that by routinely doing so and repeatedly assuring the plaintiff that the problems that he was experiencing were the result of natural settling of the property, Little fraudulently concealed plaintiff's cause of action and/or caused plaintiff to believe the problems would be resolved, thus preventing plaintiff from filing suit.

It is undisputed that Little did tell plaintiff that the cracks were the result of natural settling and that in 2014 Little said he had built the residence on uncompacted fill dirt.

Little's supplemental facts in reply to plaintiff's response to the Motion for Summary Judgment were not responded to so far as the Court can find in the court file. Therefore, such facts are deemed by the Court to be admitted. Undisputed fact number 26, is that defendant, Carl Little, did not believe the foundation was built incorrectly.

The material facts are undisputed. On such facts, the Court finds that there was no affirmative action of concealment on the part of Little. The Court concludes that the complaint was filed outside the statutes of limitation and repose and is time barred.

5

A bench trial took place in 2019 on the issue of Bridgewater POA's responsibility to repair the residence. There is no transcript or statement of the evidence regarding this trial in the record. The trial court entered an order stating as follows in pertinent part:

> Section 5 of the Master Deed provides that the Bridgewater Condominium [Property Owners] Association shall have primary responsibility for the maintenance and repair of "limited common elements." The term "limited common elements" is defined in the same paragraph as the porches, patios and parking spaces in front of each unit. The patio which is in need of repair at plaintiff's home is at the rear of the structure.
>
> Section H of the Bridgewater Condominiums restrictive covenants provides that the Property Owners Association (POA) shall maintain, manage and landscape all . . . roofs, common elements, and exteriors of the buildings located upon the above described properties (including patios, limited common areas, but excluding windows of units) . . . The restrictive covenants do not limit the duty to maintain only front facing patios as did the Master Deed.
>
>     \*  \*  \*
>
> The POA retained engineer George Cross who testified as to the defects and damage to the residence. . . . Mr. Cross testified that there was a void underneath the basement slabs which was abnormal.
>
> Mr. Cross stated that it appeared that the developer had brought in offsite soil to build up the lot. The material used beneath the basement slab was shale and clay while the material under the patio was native or similar material. Both areas of fill were put down without breaking the material down and without sufficiently compacting such material. Mr. Cross testified that where the outside back patio had shifted, the foundation was not deep enough. He found that the porch needs structural repairs. In summary, he found that the back porch is still sitting on unstable ground caused by the independent porch foundation and that the damage to the inside of the house is caused by the basement floor slab settling.
>
>     \*  \*  \*
>
> Pursuant to Section 5 of the Master Deed, the POA has the responsibility for the maintenance and repair of common and limited common elements. This includes porches and patios whether at the front or the rear of the property,

6

the restrictive covenants having expanded the duty to maintain patios to the rear. Therefore, the Court finds that to be the obligation and responsibility of [Bridgewater POA]. The method and costs of repair remain to be determined.

(Internal citation omitted). Bridgewater POA did not contest the trial court's ruling on its liability and attempted to expedite the repairs to the patio areas.

## II. ISSUES

Both Plaintiff and Bridgewater POA, as cross-appellant, raise the issue of (1) whether the trial court erred in granting summary judgment to Defendant on the basis of the statutes of limitations and repose, despite Defendant's assurances to Plaintiff that the residence's problems were simply the result of "natural settling" and Plaintiff's reliance upon those representations. Plaintiff raises the additional issue of (2) whether the trial court erred in concluding that Bridgewater POA's duty to repair his residence was limited to the front and rear porches and patios.

## III. STANDARD OF REVIEW

A trial court may grant summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The propriety of a trial court's summary judgment decision presents a question of law, which we review de novo with no presumption of correctness. *Kershaw v. Levy*, 583 S.W.3d 544, 547 (Tenn. 2019).

"The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 83 (Tenn. 2008). As our Supreme Court has instructed,

when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense.

*Rye v. Women's Care Ctr. of Memphis*, 477 S.W.3d 235, 264 (Tenn. 2015) (emphasis in original). "[I]f the moving party bears the burden of proof on the challenged claim at trial, that party must produce at the summary judgment stage evidence that, if uncontroverted at

7

trial, would entitle it to a directed verdict." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 888 (Tenn. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986)).

When a party files and properly supports a motion for summary judgment as provided in Rule 56, "to survive summary judgment, the nonmoving party may not rest upon the mere allegations or denials of its pleading, but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, set forth specific facts . . . showing that there is a genuine issue for trial." *Rye*, 477 S.W.3d at 265 (internal quotation marks and brackets in original omitted). "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects,* 578 S.W.3d at 889 (quoting *Rye*, 477 S.W.3d at 265).

In reviewing the trial court's summary judgment decision, we accept the evidence presented by the nonmoving party (in this case, Plaintiff) as true; allow all reasonable inferences in his favor; and "resolve any doubts about the existence of a genuine issue of material fact in favor of" Plaintiff, the party opposing summary judgment. *Id.* at 887.

## IV. ANALYSIS

### A. Statute of Limitations

An action for injuries to personal or real property is governed by Tenn. Code Ann. § 28-3-105, which provides that it "shall be commenced within three (3) years from the accruing of the cause of action." As the Supreme Court stated in *Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012),

> A defense predicated on the statute of limitations triggers the consideration of three components—the length of the limitations period, the accrual of the cause of action, and the applicability of any relevant tolling doctrines. All of these elements are inter-related and, therefore, should not be considered in isolation.

"The concept of accrual relates to the date on which the applicable statute of limitations begins to run." *Id.* at 457. The question of the correct accrual date requires the application of the discovery rule, which "provides that a cause of action accrues and the statute of limitations begins to run 'when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant.'" *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 143 (Tenn.

2001) (quoting *Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998)).  As we have recently observed,

> The discovery rule was adopted as an "equitable exception" to the statute of limitations due to the unfairness of requiring a plaintiff to sue to vindicate a non-existent wrong at a time when the injury was unknown and unknowable. *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 710 (Tenn. 2019).  "Under the discovery rule, the statute of limitations will only begin to run when the plaintiff has actual knowledge of the claim, or when the plaintiff has actual knowledge of facts sufficient to put a reasonable person on notice that she has suffered an injury as a result of wrongful conduct." *Coffey v. Coffey*, [578 S.W.3d 10, 22 (Tenn. Ct. App. 2018)].  The discovery rule is not intended to allow a plaintiff to delay filing suit until he or she discovers all the facts affecting the merits of his or her claim. *Redwing*[,] 363 S.W.3d 436, 459 (Tenn. 2012).  Thus, the limitations period begins to run when the plaintiff "gains information sufficient to alert a reasonable person of the need to investigate the injury." *Id*. (quotation omitted).
>
> \*    \*    \*
>
> [F]or purposes of the discovery rule, "whether a plaintiff exercised reasonable care and diligence in discovering her injury is usually a fact question for the trier of fact to determine."  *Coffey*, [578 S.W.3d at 22].

*Maddox v. Olshan Foundation Repair & Waterproofing Co. of Nashville, L.P.*, No. M2018-00892-COA-R3-CV, 2019 WL 4464816, at \*15-16 (Tenn. Ct. App. Sept. 18, 2019).

This action was filed on September 9, 2014, so if it accrued before September 9, 2011, it is time-barred unless the statute of limitations was tolled by the doctrines of equitable estoppel or fraudulent concealment, as discussed further below.  The trial court made no finding of when Plaintiff's action accrued.  It stated only, "[i]t is undisputed that plaintiff noticed damage to the property during the first year after its purchase in 2007," and "Plaintiff initially contacted defendant with a 'warranty claim' within the first 2 years of the purchase of the home."  It is clear that Plaintiff began seeing cracks and other problems suggestive of settlement shortly after he moved in, but he also testified that Defendant was "very good" about fixing them during the first two years or so.  As already noted, Plaintiff said that Defendant "repaired the cracks and attempted to adjust the doors until mid-2011."  A reasonable trier of fact could determine from the evidence in the record that Defendant made good on repairing problems and addressing Plaintiff's warranty claim complaints during the early years following his purchase, and thus a reasonably diligent

9

homeowner in Plaintiff's position would have had no reason to know he had an actionable legal claim then. This is particularly true given Defendant's undisputed assurances that the cracks and other issues were only due to normal settling of a newly-constructed house. To hold that Plaintiff should have immediately sued Defendant rather than asking him to fix the problems under a warranty claim would be to "penalize" him "for attempting to obtain compliance with the contract without litigation." *Molin v. Perryman*, No. 01A01-9705-CV-00232, 1998 WL 83737, at *5 (Tenn. Ct. App. Feb. 27, 1998).

Plaintiff testified that the cracks appeared to subside in 2012, giving him reason to think that Mr. Little's assurances about natural settling were true. But then in November 2012, more serious problems surfaced, including cracks "opening up all over the house." By March of 2014, Plaintiff received an indication that there might be a structural or foundational problem with the residence, when Mr. Little admitted that it was built on uncompacted fill dirt. This Court has held on several occasions that

> there is ample authority for the proposition that whether a plaintiff discovered, or in the exercise of reasonable diligence, should have discovered an injury resulting from a defendant's act creates a genuine issue of fact, precluding disposition by summary judgment. *Caledonia Leasing and Equip. Co. v. Armstrong, Allen, Braden, Goodman, McBride & Prewitt*, 865 S.W.2d 10, 18 (Tenn. App. 1992); *Nat'l Mortgage Co. v. Washington*, 744 S.W.2d 574, 580 (Tenn. App. 1987); *Gosnell v. Ashland Chem. Inc.*, 674 S.W.2d 737, 739 (Tenn. App. 1984). As the court stated in *National Mortgage*, "Whether any kind of behavior conforms to a legal standard of reasonable conduct is a mere fact question for the jury, and not a question of law." 774 S.W.2d at 580. Similarly, this court stated in *Hathaway v. Middle Tennessee Anesthesiology, P.C.*, 724 S.W.2d 355 (Tenn. App. 1986), "The question of whether due diligence under the circumstances required . . . any other particular form of investigation is properly a question for the trier of fact after hearing all of the evidence, rather than a question of law to be determined by summary judgment based upon the . . . record." *Id*. at 360.

*City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 735 (Tenn. Ct. App. 1996); *see also Maddox*, 2019 WL 4464816, at *16; *Coffey*, 578 S.W.3d at 21; *Palazzo v. Harvey*, 380 F.Supp.3d 723, 731 (M.D. Tenn. 2019) ("Ordinarily, the question of whether a plaintiff knew or should have known that a cause of action existed is a question of fact, inappropriate for summary judgment.") (quoting *City State Bank*); *Liggett v. Brentwood Builders, LLC*, No. M2007-00444-COA-R3-CV, 2008 WL 836115, at *5 (Tenn. Ct. App. Mar. 27, 2008) ("The time of the accrual of the cause of action, as affecting limitations, is frequently a question of fact to be determined by the jury or trier of fact, as where the evidence is

conflicting or subject to different inferences.") (quoting *Prescott v. Adams*, 627 S.W.2d 134, 137 (Tenn. Ct. App. 1981)). In *Prescott*, this Court stated:

> The question in the instant case is when should the plaintiffs have reasonably known that their cause of action existed.
>
> We believe it is inappropriate for the Chancellor to have decided this question on the basis of a motion for summary judgment. Although the facts may not have been in dispute, a dispute did exist as to the proper interpretation of those facts. Summary judgment for the defendant is not proper where, although the basic facts are not in dispute, parties in good faith may disagree nevertheless about the inferences to be drawn from the facts.

138 S.W.2d at 138-39. In the present case, Defendant relies upon *Liggett*, in which the Court departed from the general principle discussed above and held summary judgment appropriate because the homeowners' undisputed knowledge of "significant and pervasive problems," defects, and damage was so clear that a trier of fact could only conclude that they knew or should have known of their cause of action more than three years before filing suit. 2008 WL 836115, at *5-*6. However, in this case, as in *Maddox, Palazzo, City State Bank*, and *Prescott*, we find that a genuine issue of material fact exists as to when Plaintiff knew, or in the exercise of reasonable diligence should have known, that his cause of action existed.

Even if the trier of fact concludes that Plaintiff's action accrued before September 9, 2011, it may still survive if it is determined that the statute of limitations should be tolled by application of the doctrine of equitable estoppel or the related concept of fraudulent concealment, as Plaintiff and Bridgewater POA have alleged. "[T]he doctrine of equitable estoppel tolls the running of the statute of limitations when the defendant has misled the plaintiff into failing to file suit within the statutory limitations period." *Redwing*, 363 S.W.3d at 460. As the Supreme Court explained in *Redwing*,

> The party invoking the doctrine of equitable estoppel has the burden of proof. *Hardcastle v. Harris*, 170 S.W.3d at 85. Thus, whenever a defendant has made out a prima facie statute of limitations defense, the plaintiff must demonstrate that the defendant induced him or her to put off filing suit by identifying specific promises, inducements, suggestions, representations, assurances, or other similar conduct by the defendant that the defendant knew, or reasonably should have known, would induce the plaintiff to delay filing suit. *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d at 145; *Hardcastle v. Harris*, 170 S.W.3d at 85. The plaintiff "must also demonstrate that [his or her] delay

in filing suit was not attributable to [his or her] own lack of diligence." *Hardcastle v. Harris*, 170 S.W.3d at 85.

*     *     *

In the context of defenses predicated on a statute of limitations, the doctrine of equitable estoppel always involves allegations that the defendant misled the plaintiff. *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d at 146. The focus of an equitable estoppel inquiry "is on the defendant's conduct and the reasonableness of the plaintiff's reliance on that conduct." *Hardcastle v. Harris*, 170 S.W.3d at 85; *see also Fahrner v. SW Mfg., Inc.*, 48 S.W.3d at 146. Determining whether to invoke the doctrine of equitable estoppel to counter a statute of limitations defense requires the courts to examine the facts and circumstances of the case to determine whether the defendant's conduct is sufficiently unfair or misleading to outweigh the public policy favoring the enforcement of statutes of limitations. *Hardcastle v. Harris*, 170 S.W.3d at 85.

*Id.* at 460, 461 (brackets in original).

In the present case, Plaintiff testified that Defendant fixed the problems that appeared with the residence for the first couple of years, in accordance with the warranty. In his answers to interrogatories, Plaintiff stated that "Carl Little Construction repaired the cracks and attempted to adjust the doors until mid-2011." In 2010, Mr. Little told Plaintiff that the problems were all due to naturally occurring settling. Plaintiff testified, and Mr. Little did not dispute, that Mr. Little said, "you got a good, well-built house that's going to be here for a long time. That's just natural settling, just don't worry about it. It will all settle down and you're not going to have any problems." The cracks "appeared to subside" in 2012 until about November, when they began to reappear throughout the residence. Plaintiff testified that "I'm not a builder and I'm not a structural engineer and I relied on Mr. Little's testimony to me that this is all natural." Plaintiff's reliance on Mr. Little's reassurances was not disputed by Defendant. Plaintiff stated that homebuilder "Matt Means discovered that the foundation footer was separating from the foundation in October 2013."

According to *Redwing*, "[t]he statute of limitations is tolled for the period during which the defendant misled the plaintiff." 363 S.W.3d at 461. "At the point when the plaintiff knows or should know that the defendant has misled him or her, the original statute of limitations begins to run anew, and the plaintiff must file his or her claim within the statutory limitations period." *Id.* Under the circumstances presented here, we are of the opinion that genuine issues exist regarding whether Mr. Little misled Plaintiff, for how

12

long, and when Plaintiff realized or should have realized that Mr. Little's assurances were not true. *See, e.g., Northeast Knox Util. Dist. v. Stanfort Constr. Co.*, 206 S.W.3d 454, 461 (Tenn. Ct. App. 2006) (where the "reasonable inferences support more than one reasonable conclusion[,] a genuine issue of material fact exists as to whether [the defendants] are equitably estopped from asserting the statute of limitations"). In the *Liggett* case upon which Defendant relies, we held that there was no genuine issue of material fact regarding "whether defendant's actions lulled the plaintiffs into delaying suit," 2008 WL 836115 at *7, but *Liggett* is distinguishable because in that case we observed that the plaintiffs "have not pointed to any evidence that Brentwood Builders somehow induced them to delay filing suit by assuring them that it would take care of the alleged defects." *Id.* In this case, viewing the evidence in the light most favorable to the non-movant Plaintiff, a reasonable trier of fact could conclude that Mr. Little made such assurances.

Plaintiff also argues that the statute of limitations should be tolled by operation of the fraudulent concealment doctrine. In *Redwing*, the Supreme Court stated,

> For over a century now, Tennessee's courts have also held that the doctrine of fraudulent concealment will toll the running of a statute of limitations. . . . While the doctrine of fraudulent concealment shares many of the attributes of the doctrine of equitable estoppel, Tennessee's courts, like most courts, have recognized it as a free-standing doctrine.

> As it currently exists in Tennessee, the doctrine of fraudulent concealment is aligned with the discovery rule. Under the fraudulent concealment doctrine, the statute of limitations is tolled when "the defendant has taken steps to prevent the plaintiff from discovering he [or she] was injured." *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d at 146. While other decisions couch the fraudulent concealment doctrine in terms of the defendant taking affirmative steps "to conceal the cause of action," the reference to "cause of action" in this context is synonymous with the plaintiff's injury.

> \*     \*     \*

> A claim of fraudulent concealment to toll the running of a statute of limitations contains four elements. The plaintiff invoking the fraudulent concealment doctrine must allege and prove: (1) that the defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so; (2) that the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence; (3) that the defendant knew that the plaintiff had been injured and the identity

13

of the wrongdoer; and (4) that the defendant concealed material information from the plaintiff by "'withholding information or making use of some device to mislead' the plaintiff in order to exclude suspicion or prevent inquiry."

363 S.W.3d at 461-62 (footnotes and internal citations omitted; brackets in original). Tennessee courts have observed on numerous occasions that "it is rare for summary judgment to be appropriate when considering an issue of fraud." *Arrington v. Bryant*, No. E2018-02165-COA-R3-CV, 2019 WL 6211256, at *7 (Tenn. Ct. App. Nov. 20, 2019) (quoting *Efird v. Clinic of Plastic & Reconstructive Surgery, P.A.*, 147 S.W.3d 208, 222 (Tenn. Ct. App. 2003); *see also Patel v. Bayliff*, 121 S.W.3d 347, 355 (Tenn. Ct. App. 2003) ("insofar as the . . . claims relate to the claim of fraudulent concealment, the grant of summary judgment is reversed"); *Soldano v. Owens-Corning Fiberglass Corp.*, 696 S.W.2d 887, 890 (Tenn. 1985) (reversing summary judgment on fraudulent concealment claim); *Shadrick v. Coker*, 963 S.W.2d 726, 736 (Tenn. 1998) (reversing summary judgment where "there is evidence sufficient to create a jury issue on all the key elements of fraudulent concealment"); *Prescott*, 627 S.W.2d at 138 (finding "sufficient basis on which the jury could infer that the cause of action had been concealed and makes summary judgment inappropriate on this issue"); *Watts v. Putnam Cnty.*, 525 S.W.2d 488, 494 (Tenn. 1975) ("[t]he existence of either [fraud or wrongful concealment] was for the jury to determine under proper instructions"); *Maddox*, 2019 WL 4464816, at *17 ("Whether a defendant had the present intent to defraud another is a question of fact. . . . Likewise, the truthfulness or falsity of a statement is a question of fact.") (quoting *Morrison v. Allen*, 338 S.W.3d 417, 428 (Tenn. 2011)).

Although when Mr. Little was asked in his deposition about the foundation, he said, "I thought it was in right," he also admitted that he "told Mr. Frazier, in the plaintiff's presence, that he had built the plaintiff's residence on un-compacted fill dirt." Mr. Little also testified that he "didn't compact anything." The engineering reports suggest that the root cause of the excessive settlement problems was the failure to build the house on properly compacted fill dirt. This was not a readily observable or discoverable defect because it was underground below the residence. Nor was the "abnormal" second concrete slab below the foundation slab, described as "floating" or unattached to the structure, easily detectable to a reasonably diligent homeowner. Mr. Little further stated as follows:

Q: [W]ere you, yourself personally in charge of the day to day construction of 256 Bridgewater Court?

A: Yes.

Q: Okay. Did you have a foreman that was on the job every day or were you on the job every day?

A: I was on the job.

This testimony raises a reasonable inference that Mr. Little was or should have been aware of the foundation defects, since he was personally on the job site supervising construction. The trier of fact could also reasonably conclude from the evidence in the record that Mr. Little knew his reassurances that the cracks and other problems were due to "normal settling," and that Plaintiff had no need to worry because it was a well-built house, were not true. Because there are genuine issues of material fact regarding when Plaintiff's cause of action accrued and whether the doctrines of equitable estoppel or fraudulent concealment are applicable, we vacate the trial court's summary judgment on the ground of the statute of limitations.

## B. Statute of Repose

The governing statute of repose, Tenn. Code Ann. § 28-3-202, provides as follows in pertinent part:

> All actions . . . to recover damages for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property, for injury to property, real or personal, arising out of any such deficiency, . . . must be brought against any person performing or furnishing the design, planning, supervision, observation of construction, or construction of the improvement within four (4) years after substantial completion of an improvement.

Because Plaintiff brought his action nearly seven years after substantial completion, it would be barred by the statute of repose regardless of when it accrued, unless Plaintiff is correct that Defendant is precluded from asserting the statute of repose under Tenn. Code Ann. § 28-3-205(b), which states that "[t]he limitation provided by this part is not available as a defense to any person who has been guilty of fraud in performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying, in connection with an improvement, or to any person who wrongfully conceals any such cause of action." The Supreme Court observed in *Watts* that "[i]n legal effect, fraud or wrongful concealment obliterate the statute and the suit is wholly governed by [the statute of limitations]." 525 S.W.2d at 494. The *Watts* Court went on to state,

> With respect to the petitioner, Watts, the Court of Appeals held that the lawsuit was filed more than five years after substantial completion, and 'was

15

not filed within the time allowed by the statute [of repose].' On the surface this is correct. Therefore, the suit was barred as to Watts unless, but only unless, Sec. 28-314 [currently § 28-3-202] et seq. was rendered inoperative as a result of fraud or wrongful concealment. *The existence of either was for the jury to determine* under proper instructions.

*Id.* (emphasis added); *see also Palazzo*, 380 F. Supp. 3d at 730 ("In short, exactly which of the Defendants knew what and when (if anything), and whether either was trying to deceive Palazzo cannot be resolved on the record before the Court. This alone is enough to deny summary judgment . . . ."). This Court has on occasion considered the statutory term "wrongful concealment" as synonymous with "fraudulent concealment." *See Counts Co. v. Praters, Inc.*, 392 S.W.3d 80, 86 (Tenn. Ct. App. 2012); *Lockwood v. Hughes*, No. M2008-00836-COA-R3-CV, 2009 WL 1162577, at *5 (Tenn. Ct. App. Apr. 28, 2009). In *Lockwood*, we held that to establish wrongful concealment under Tenn. Code Ann. § 28-3-205(b),

a plaintiff is required to prove the following: (1) that the defendant took affirmative action to conceal the cause of action or remained silent and failed to disclose material facts despite a duty to do so; (2) the plaintiff could not have discovered the cause of action despite exercising reasonable care and diligence; (3) knowledge on the part of the defendant of the facts giving rise to the cause of action; and (4) concealment of material information from the plaintiff. *Shadrick v. Coker*, 963 S.W.2d 726, 735 (Tenn.1998). "The tolling doctrine of fraudulent concealment does not apply to cases where the court finds a plaintiff was aware or should have been aware of facts sufficient to put the plaintiff on notice that a specific injury has been sustained as a result of another's negligent or wrongful conduct." *Sommer v. Womick*, 2005 WL 1669843, at *4 (Tenn. Ct. App. July 18, 2005) (citing *Shadrick*, 963 S.W.2d at 736)).

2009 WL 1162577, at *5.

In the case of *Jenkins v. Brown*, No. M2005-02022-COA-R3-CV, 2007 WL 4372166, at *1 (Tenn. Ct. App. Dec. 14, 2007), the plaintiff homeowners "discovered that the house had been constructed on improperly compacted fill and other debris." According to the *Jenkins* Court,

The Jenkinses' theory of recovery against Mr. Wright was that he had fraudulently concealed from the Browns that the house had been constructed on improperly compacted fill material and that the nail-popping and the cracking in the interior and exterior walls were caused by settling resulting

16

from the poorly compacted fill under the house. Mr. Brown testified that when problems first appeared, Mr. Wright assured him that there were no serious problems with the house and that the house had been constructed on "original dirt." Mr. Wright admitted that he did not tell the Browns that portions of the lot had been filled in or that he had moved the original location of the house after uncovering some fill material. However, he insisted that the house had been properly sited and properly constructed. The jury specifically determined that Mr. Wright "did engage in fraud, as defined by the Court, as intentional or reckless misrepresentation or misrepresentation by concealment."

2007 WL 437216, at *11. After reviewing the record of the proof submitted to the jury in *Jenkins*, we

> concluded that it contains sufficient material evidence to support the jury's conclusion that Mr. Wright had committed "fraud" with regard to his dealings with the Browns by concealing the extent to which fill material had been used on the lot and by asserting that the house had been constructed on "original dirt." This conduct amounts to "fraud ... in performing the ... construction of" the house for the purpose of Tenn. Code Ann. § 28-3-205(b). Therefore, Mr. Wright was not entitled to assert the four-year statute of repose in Tenn. Code Ann. § 28-3-202 in this case.

*Id.* at *12. The allegations against Defendant in the present case are quite similar to those in *Jenkins*, which were found by a jury in that case to constitute fraud or wrongful concealment and affirmed by this Court.

Moreover, much of our discussion in part IV(A) above regarding Plaintiff's assertions of fraudulent concealment is directly pertinent to the analysis of fraud or wrongful concealment in the context of the statute of repose. We will not reproduce that analysis here, but we reiterate our conclusion that the issues of Defendant's knowledge and intent to defraud or wrongfully conceal the cause of action are for the jury to decide, as is the issue of whether Plaintiff exercised reasonable care and diligence under the circumstances.

### C. Bridgewater POA's Liability for Repairs

In his complaint, Plaintiff alleged that "Bridgewater is obligated to repair and/or replace the damage *to the exterior* of the plaintiff's residence." (Emphasis added). On appeal, he asserts that the trial court erred in not finding Bridgewater POA responsible for *all* of the damages to his residence, including "the defects and damage to the foundation of

17

the residence, the floating slab, and the cracks in the interior of the residence." Plaintiff never amended his complaint to include a claim for damage to parts of his residence other than the exterior.

As already noted, the trial court conducted a bench trial on Bridgewater POA's liability, but no transcript or statement of the evidence is included in the record. Consequently, it is impossible to tell if the issue of damages to the interior of the residence was tried by implied consent. Plaintiff does not argue that it was. The trial court's order finding Bridgewater POA responsible for repairs to the front and rear porches and patios does not address the issue of interior damages. "It is well settled that, in the absence of a transcript or statement of the evidence, there is a conclusive presumption that there was sufficient evidence before the Trial Court to support its judgment and this Court must therefore affirm the judgment." *PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Mabry*, 402 S.W.3d 654, 661 (Tenn. Ct. App. 2012) (quoting *Outdoor Management LLC v. Thomas*, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007)).

It is true, as Plaintiff argues, that the record contains the Master Deed, bylaws, and restrictive covenants of the Bridgewater POA, but there is no provision in those documents that supports the conclusion that Bridgewater POA is responsible for interior damages to Plaintiff's residence. As the trial court found,

> Section 5 of the Master Deed provides that the Bridgewater Condominium [Property Owners] Association shall have primary responsibility for the maintenance and repair of "limited common elements." The term "limited common elements" is defined in the same paragraph as the *porches, patios and parking spaces in front of each unit*. The patio which is in need of repair at plaintiff's home is at the rear of the structure.
>
> Section H of the Bridgewater Condominiums restrictive covenants provides that the Property Owners Association (POA) shall maintain, manage and landscape all . . . *roofs, common elements, and exteriors of the buildings located upon the above described properties (including patios, limited common areas, but excluding windows of units)* . . . The restrictive covenants do not limit the duty to maintain only front facing patios as did the Master Deed.

(Emphasis added). The trial court did not err in its judgment addressing Bridgewater POA's responsibility.

## V. CONCLUSION

The summary judgment in favor of Defendant is vacated. The judgment of the trial court regarding Bridgewater POA's responsibility is affirmed. The case is remanded for such further action as may be necessary, consistent with this opinion. Costs on appeal are assessed to the appellee, Carl Little Construction Company, Inc., for which execution may issue, if necessary.

_____
KRISTI M. DAVIS, JUDGE